RECEIVED

BY: _____

NOV - 4 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| JORDAN R. HELMES | * | |
| | * | |
| PLAINTIFF PRO SE | * | CIVIL ACTION NO. **09cv1898** |
| VS. | * | |
| | * | |
| RECEIVABLE SOLUTIONS | * | COMPLAINT AND |
| SPECIALIST, INC. | * | DEMAND FOR A JURY TRIAL |
| | * | |
| AND | * | |
| | * | |
| ELIZABETH BRICE, BRUCE BRICE | * | JUDGE |
| SENIOR, BRUCE BRICE JUNIOR, | * | |
| MAXINE BRICE | * | MAG. JUDGE |
| | * | |
| DEFENDANTS | * | |

## ORIGINAL COMPLAINT

### I. INTRODUCTION

1.     This is an action for damages brought by an individual consumer for Defendants'

violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), which

prohibits debt collectors from engaging in abusive, deceptive, and unfair practices, and for

Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"),

which requires accuracy and fairness in credit reporting.

### II. JURISDICTION AND VENUE

2.     Jurisdiction of this court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p,

and 28 U.S.C. § 1331. Supplemental jurisdiction is available under 28 U.S.C. § 1367.

Declaratory relief is available under 28 U.S.C. §§ 2201 and 2202. Venue in this District is proper

1

in that the Defendants' conduct complained of occurred here. Personal jurisdiction over the Defendants is established under LA. R.S. 13:3201.

## III. PARTIES

3.      Plaintiff is a natural person and resident of Concordia Parish, State of Louisiana, and is a "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c), from whom Defendants attempted to collect debts it alleged as being owed by Plaintiff.

4.      Defendant, RECEIVABLE SOLUTIONS SPECIALIST, INC. (hereinafter "RSSI"), is a foreign corporation not registered, licensed, or incorporated to do business within the State of Louisiana. Its principle business establishment is in Mississippi, located at 422 MAIN STREET, P.O. BOX 669, NATCHEZ, MS 39121. Its Registered Agent for service of process in Mississippi is MAXINE BRICE, 310 S. MARTIN LUTHER KING STREET, NATCHEZ, MS 39120. RSSI regularly uses instruments of interstate commerce, including the use of mails and telecommunication within Louisiana, for the principle purpose and business of collecting or attempting to collect debts asserted to be owed or due another.

5.      Defendant, ELIZABETH BRICE, is a natural person and Administrative Manager of Defendant RSSI.

6.      Defendant, BRUCE BRICE SENIOR, is a natural person and Senior President of Defendant RSSI.

7.      Defendant, BRUCE BRICE JUNIOR, is a natural person and Vice President of Defendant RSSI.

8.      Defendant, MAXINE BRICE, is a natural person, Incorporator, Registered Agent, Secretary, and Treasurer of Defendant RSSI.

2

9.       Defendants named in paragraphs 5-8 collectively form the Administration of Defendant RSSI, acted within the course and scope of their positions, and are therefore vested with the authority and responsibility for adhering to, governing, and assuring collection agency and employee compliance with the FDCPA and the FCRA through policy, oversight, and the maintenance of procedures reasonably adapted to avoid error.

10.      Defendants named in paragraphs 4-8, at all times relevant hereto, regularly attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, and are thus "debt collectors" as defined under the FDCPA, 15 U.S.C. § 1692a(6). Defendants regularly and in the course of normal business furnish consumer debt information to credit reporting agencies, and are thus "Furnishers of Information" under the FCRA.

11.      Upon information and belief, the Defendants (hereinafter referred to collectively as "Defendant") perpetrated some or all of the wrongful acts alleged within this complaint, are responsible in some manner and for any disregard, failures, or deficiencies of policy and procedure, and are jointly and severally liable to Plaintiff.

## IV. FACTUAL ALLEGATIONS

12.      Defendant attempted to collect two alleged debts related to personal medical services rendered in the State of Mississippi by unrelated providers: "Account 1" in the amount of $145 on or about April 5, 2003 and "Account 2" in the amount of $1338.25 on or about August 3, 2002.

13.      This action arises from events subsequent to online disputes of Account 1 initiated by Plaintiff on or about dates between July 17 and July 23, 2009 directly to the primary consumer credit reporting agencies – as defined under the FCRA, 15 U.S.C. § 1681a(f) –

3

Equifax Information Services, LLC, Experian Information Solutions, Inc, and Trans Union, LLC. Where permitted to comment, Plaintiff specified the alleged creditor "Magnolia Medical" was unknown to him and he denied ever having conducted a transaction for services at such place of business.

14.     Plaintiff intended to relocate within 30 days and needed to obtain financing for a vehicle and his relocation expenses, both at favorable and affordable interest rates.

15.     On or about July 23, 2009, Plaintiff mailed a letter to Defendant denying liability for the alleged debt, but offered money – strictly for its deletion from his credit reports and the avoidance of a protracted dispute such as this action – if Defendant would agree to delete it quickly.

16.     Defendant was notified that phone calls were not to be placed to Plaintiff's residence or place of employment, in his following words, "*I would like to request that all correspondence be communicated in writing and that no phone calls be placed to any residence or place of employment regarding any alleged debts.*" See exhibit "**A**." This notice was given to forbid inconvenient telephone calls to Plaintiff in a manner that could not be mistaken or evaded by Defendant. Plaintiff's letter was signed for and received by Defendant ELIZABETH BRICE on July 24, 2009. See exhibit "**B**."

17.     Defendant did not respond to Plaintiff's July 23 letter.

18.     The reporting of Account 1 was deleted from Plaintiff's Trans Union credit report on or about August 5, 2009.

19.     The reporting of Account 1 was deleted from Plaintiff's Equifax credit report on or about August 12, 2009.

4

20.     The proactive deletions described in paragraphs 18 and 19 reflect that, in response to notification of a dispute from the credit reporting agencies, an unknown person or persons at RSSI knew or learned the alleged debt to be invalid, inaccurate, or unverifiable, and then subsequently requested their deletions or otherwise replied as unverifiable.

21.     On or about August 24, 2009, Defendant verified to Experian that Account 1 was valid and accurate. Experian subsequently notified Plaintiff that the alleged debt would continue reporting unchanged.

22.     Plaintiff initiated a second online dispute through Experian, but was precluded from selecting the previous identifier of the dispute's nature. Plaintiff generally commented that Defendants had not responded to his previous dispute and correspondence, and requested they do so or delete the tradeline.

23.     Plaintiff wrote another letter addressed to the Manager of Defendant RSSI, inquiring as to whom verified the alleged debt, and that if RSSI did so, he requested to see the information used to affirm the validity and accuracy of the debt to Experian. See exhibit "C," page one.

24.     Defendant subsequently made a total of seven telephone calls to Plaintiff's residence notwithstanding the notice it received, quoted within paragraph 16, forbidding all telephone calls. The time and dates of Defendant's calls are as follows; see exhibit "D":

       a.    3:57 PM on August 31, 2009;

       b.    11:27 AM on September 1, 2009;

       c.    12:52 PM on September 1, 2009;

       d.    4:40 PM on September 1, 2009;

       e.    10:32 AM on September 3, 2009;

f.     11:09 AM on September 4, 2009;

g.     2:44 PM on September 10, 2009;

25.     As a direct result of the repeated telephone calls by Defendant, Plaintiff felt annoyed and harassed -- feelings significantly amplified by the written fact Defendant was notified previously that telephone calls were prohibited.

26.     On or about September 2, 2009, Plaintiff received an envelope from Defendant containing the following documents as described:

27.     One dunning letter (hereinafter exhibit "E"), dated September 1, 2009, demanding immediate payment for two alleged debts: Account 1 in the amount of $145, and Account 2 in the amount of $1338.25. The combined total of the alleged debts, $1483.25, was demanded upon Plaintiff's receipt of exhibit "E," stated in Defendant's following words, *"THIS IS A REMINDER OF YOUR OBLIGATION DUE FOR THE ACCOUNTS LISTED ABOVE."*

28.     One "Itemized Charges" sheet by "Magnolia Medical Management, Inc." (hereinafter exhibit "F") dated October 26, 2004, alleging an amount owed of $145 for services rendered by a fourth-party natural person on April 5, 2003. Accompanying this sheet was a "Face Sheet," containing Plaintiff's personal information, dated October 25, 2004.

29.     Plaintiff immediately noticed the dated printing of October 2004 on each document, reflecting that Defendant did not confer with any creditor or assignor to obtain and forward verification of the alleged debt's validity and accuracy subsequent to Plaintiff's disputes, as would be reasonable for an alleged debt of its age, but that Defendant submitted obsolete documentation already in its prior possession. The expediency with which Defendant submitted

6

documents to Plaintiff lends credence to this reflection when considered with the facts revealed in paragraph 45.

30.    On or about September 3, 2009, Plaintiff received a second envelope from Defendant, containing the following documents as described:

31.    One dunning letter (hereinafter exhibit "**G**"), dated September 2, 2009, demanding payment of $1483.25. This letter states and admits in writing by Defendant, "*WE HAVE ATTEMPTED TO REACH YOU BY TELEPHONE ON SEVERAL OCCASIONS...*"

32.    One itemized charge sheet by "Natchez Regional Medical Center" (hereinafter exhibit "**H**"), alleging an amount owed of $1338.25 for services rendered on August 3, 2002. This charge sheet reveals, in great detail, medical procedures, tests, and medications.

33.    Defendant's exhibit "**G**" dunning references only Account 2 – an account for which the creditor alleged an amount owed of $1338.25 – but Defendant demands a greater amount and without disclosing what that additional amount is assessed for on Account 2.

34.    Plaintiff searched through old mail and found a dunning letter from Defendant dated February 11, 2008 (hereinafter exhibit "**I**"), which likewise referenced only Account 2 and demanded a greater amount than the creditor alleged as owed. Exhibit "**I**" specifically states that no fees had been added, nor had any interest accrued.

35.    On or about a date between September 5, 2009 and September 9, 2009, Defendant again verified Account 1 to Experian as being valid and accurate.

36.    Plaintiff subsequently attempted to dispute the account a third time but Experian's system precluded a third dispute of the alleged debt being filed.

37.    On September 10, 2009, Defendant BRUCE BRICE SENIOR signed for and received another letter by Plaintiff (hereinafter exhibit "**J**"). Plaintiff affirmed his continued

7

dispute of the alleged debts and rejected the obsolete documentation and incomplete information submitted to him by Defendant.

38.     On September 19, 2009, Defendant MAXINE BRICE signed for and received another letter by Plaintiff. This letter notified Defendant that Plaintiff intended to file suit for violations of collections laws if Defendant did not respond with good-faith intent to discuss and settle the matter privately.

39.     Plaintiff received no reply from Defendant.

40.     On or about a date between October 1 and October 14, 2009 Defendant updated its reporting to Experian and failed to communicate the debt as being disputed by the consumer.

41.     On October 15, 2009, a letter by Plaintiff (hereinafter exhibit "**K**") was received at the principle address for Magnolia Medical Management, Inc. (hereinafter "Magnolia"), listed in its MS. 2009 Corporate Annual Report as being "P.O. Box 1103, Natchez, MS 39121." See exhibit "**L**."

42.     The above postal address is also the mailing address of "The Gillon Group, PLLC," a CPA firm in Natchez, MS. Plaintiff's letter was accepted, received, and signed for by Ms. Renella Shelby, an employee of The Gillon Group. See exhibit "**M**."

43.     Plaintiff, in exhibit "**K**," disputed the alleged debt of Account 1, requested debt validation, and demanded the business name, address, and phone number of the original creditor, alleged by Magnolia in 2004 to be a natural person named "Walter E Dawkins."

44.     Plaintiff received no reply of any kind from Magnolia, nor the CPA firm which receives its mail, to his dispute and request letter.

45.     On or about October 28, 2009, Plaintiff telephoned the number listed in Magnolia's 2009 Corporate Annual Report, 601-446-6681, which was answered by Ms. Renella

8

Shelby at The Gillon Group. Pertinent excerpts from Plaintiff's conversation with Ms. Shelby in regards to Magnolia are as follows:

> Plaintiff:   "*I'm trying to reach a company called Magnolia Medical Management. Is this..*"

> Ms. Shelby:   "*It used to be here sir; we no longer do them anymore. What do you have a question about?*"

> Plaintiff:   "*I have a statement of a bill – I sent you a letter about it – I wanted to try and find out about it. Do you know where I can reach [Magnolia]?*"

> Ms. Shelby:   "*You'd have to try* <u>the hospital itself.</u>" (Emphasis added by Plaintiff)

> Plaintiff:   "*Which hospital? It doesn't say on here.*"

> Ms. Shelby:   "*Hold on, let me see if I can have someone else help you, hold on.*"

> Ms. Shelby:   "*Those accounts were turned over to Receivable Solutions and that number is..*"

> Plaintiff:   "*So Magnolia Medical doesn't do anything with it anymore?*" (Plaintiff's phrasing means to ask, "..doesn't have anything to do with it anymore?")

> Ms. Shelby:   "*No. No sir* <u>we</u> *do not.*" (Emphasis added by Plaintiff)

> Ms. Shelby:   "*Just call that number, they can help you, because they can research it for you.*"

46.     On November 2, 2009, Plaintiff telephoned the hospital to which Ms. Shelby recommended he inquire for Magnolia, "Natchez Community Hospital" in Natchez, MS. Plaintiff's inquiry was as follows:

> NCH Switchboard:     *"Natchez Community Hospital..."*
>
> Plaintiff:               *"Good morning. Do you have an office or department*
>                          *there called Magnolia Medical Management?"*
>
> NCH Switchboard:     *"...No we don't... Magnolia Medical Management? No we*
>                          *don't."*

47.     A phone number for Magnolia, listed on the obsolete documentation submitted by Defendant as being 601-446-6402, was found by Plaintiff to be, or to have been, a listing for "*Magnolia Medical Billing, LLC.*" a distinct business entity formed by a Ms. Pamela Beacher in May 2002, with a current or previous address of 522 MAIN STREET, NATCHEZ, MS 39120. See exhibit "N."

48.     "Magnolia Medical Management, Inc." is listed as being incorporated by a Mr. Michael Wheelis in September 2001. Both business entities list or listed mailing addresses and phone numbers held by The Gillon Group. See exhibit "O." Magnolia's principle place of business between 2001 and 2008 was listed as a presumed personal residence of Mr. Wheelis, although the listed corporate phone number, 601-446-6681, has consistently remained as that of The Gillon Group since Magnolia's 2002-2003 Report. See exhibit "P."

49.     As of this filing, Plaintiff has been unable to find a listing for Magnolia in any telephone directory or information service, nor at the hospital which Ms. Shelby recommended Plaintiff inquire. Plaintiff finds no credible information that indicates Magnolia is or ever was participating in any meaningful way with the original assignment, collection activity, and recent

dispute verifications of the alleged debt by Defendant, nor any credible information that Magnolia is or ever was operating as a business entity distinct from functions performed by employees of The Gillon Group, which has disavowed Magnolia.

### V. FIRST CAUSE OF ACTION
### (Against all Defendants for violating the FDCPA)

50.   Plaintiff herein repeats, re-alleges, and incorporates paragraphs 1-49.

51.   Defendants violated the FDCPA. Violations include but are not limited to:

52.   **Count 1:**   As referenced in P. 16, 24, 25, and 31; Defendants repeatedly and admittedly attempted to contact Plaintiff by telephone and willfully failed to comply with written notice that telephone calls to his residence were forbidden. Failure of a debt collector to cease telephone communication upon request of the consumer is prohibited by 15 U.S.C. § 1692c(c);

53.   **Count 2:**   As referenced in P. 16, 24, 25, and 31; Defendants repeatedly, willfully, and admittedly attempted to contact Plaintiff by telephone at a place previously made known as being inconvenient for and unwelcomed by Plaintiff, as prohibited by 15 U.S.C. § 1692c(a)(1);

54.   **Count 3:**   As referenced in P. 24 and 25; Defendants intentionally engaged in annoying and harassing behavior in connection with the collection of alleged debts by causing the telephone to ring repeatedly on September 1, 2009, as prohibited by 15 U.S.C. § 1692d(5);

55.   **Count 4:**   As referenced in P. 21, 35, and 40; In the month of October 2009, Defendants reported and updated the alleged debt of Account 1 to Experian and failed to communicate it as being disputed by the consumer. Failure to communicate a disputed debt as disputed is prohibited by 15 U.S.C. § 1692e(8);

56.   **Count 5:**   As referenced in P. 30, 31, 32, 33, and 34; Defendants repeatedly and willfully merged the unrelated alleged balance of Account 1 into collection activities for Account 2 on multiple occasions since at least February 11, 2008 in attempt to collect it, and without disclosing what the greater amount is demanded for, thus using a false representation or deceptive means in attempt to collect the alleged debt of Account 1, as prohibited by 15 U.S.C. § 1692e(10);

57.   **Count 6:**   As referenced in P. 30, 31, 32, 33, and 34; Defendants repeatedly and falsely represented the character and the amount of an alleged debt by adding an undisclosed amount to Account 2, thereby misrepresenting the balance originally alleged by the creditor as owed, as prohibited by 15 U.S.C. § 1692e(2)(A);

58.   **Count 7:**   As referenced in P. 30, 31, 32, 33, and 34; Defendants repeatedly, unfairly, and unconscionably attempted to collect the unrelated alleged debt of Account 1 through its efforts to collect Account 2 – an additional amount not expressly authorized by any agreement or permitted by any law – as prohibited by 15 U.S.C. § 1692f(1);

12

59.  **Count 8**:     As referenced in P. 27; Defendants misrepresented the legal status of two unrelated alleged debts by stating an "obligation due" for each, alleged to be due for medical services rendered in the year 2003 and 2002. The period of prescription in Louisiana for the alleged debts expires upon three years, pursuant to LA. C.C. 3494(1). The statute of limitations in Mississippi for the alleged debts completes upon three years, pursuant to MS. Code 15-1-29 or MS. Code 15-1-49. Misrepresenting the legal status of a debt is prohibited by 15 U.S.C. § 1692e(2)(A);

60.  **Count 9**:     As referenced in P. 26, 27, 28 and 29; Defendants knowingly furnished to Plaintiff forms intended to give him the false belief that Magnolia was and is – on behalf of a natural person – participating in the assignment, collection activity, reporting, and recent verifications of the alleged debt to Experian by Defendant, as prohibited by 15 U.S.C. § 1692j(a);

## VI. SECOND CAUSE OF ACTION
### (Against all Defendants for violating the FCRA)

61.  Plaintiff herein repeats, re-alleges, and incorporates paragraphs 1-60.

62.  Defendants violated the FCRA. Violations include but are not limited to:

63.  **Count 1-A**:    As referenced in P. 13, 18, 19, 20, and 21; Defendants willfully verified to a credit reporting agency an alleged debt known to be invalid, inaccurate, or unverifiable, as prohibited by 15 U.S.C. § 1681s-2(b)(1);

13

64.   **Count 1-B:**   Or in the alternative, as referenced in P. 13, 18, 19, 20, and 21; Defendants willfully – or negligently through failure to establish and or maintain reasonably adapted procedures to avoid error – verified an alleged debt to a credit reporting agency without conducting the investigation required subsequent to being notified by a credit reporting agency of a dispute regarding the alleged debt, as prohibited by 15 U.S.C. § 1681s-2(b)(1);

65.   **Count 2-A:**   As referenced in P. 13, 18, 19, 20, 21, and 35; Defendants willfully verified to a credit reporting agency, on a second occasion, an alleged debt known to be invalid, inaccurate, or unverifiable, as prohibited by 15 U.S.C. § 1681s-2(b)(1);

66.   **Count 2-B:**   Or in the alternative, as referenced in P. 13, 18, 19, 20, 21, and 35; Defendants willfully verified an alleged debt, on a second occasion, without conducting the investigation required subsequent to being notified by a credit reporting agency of a dispute regarding the alleged debt, as prohibited by 15 U.S.C. § 1681s-2(b)(1);

67.   **Count 3:**   As referenced in P. 13, 18, 19, 20, 21, 22, 35, and 40; Defendants, by reporting and updating the alleged debt in the month of October, willfully continue to fail in reporting to Experian the information or lack of information which originally informed Defendants' cause for deletion of the tradeline from both Equifax and TransUnion. Failure to report such causal information or lack of information to all other consumer reporting agencies it previously reported the

inaccurate or unverifiable credit information to is prohibited by 15 U.S.C. § 1681s-2(b)(1)(D).

68. **Count 4:**     As referenced in P. 40; Defendant updated and reported the alleged debt to Experian, on a third occasion on or about a date between October 1 and October 14, 2009, and willfully omitted disclosure that the disputed debt is disputed. Defendant was directly notified, through a draft copy of this complaint received on October 27, 2009, that the tradeline failed to reflect Plaintiff's dispute and as such creates a misleading impression of the alleged debt's status which is repeatedly communicated to Plaintiff's current and potential creditors, from whom Plaintiff has suffered adverse actions of increased interest rates and credit denial. Defendant willfully refuses to modify or delete information it has been notified of as being patently incorrect, inaccurate, and incomplete, as prohibited by 15 U.S.C. § 1681s-2(b)(1)(D);

## VII. ACTUAL DAMAGES

69.     Plaintiff herein repeats, re-alleges, and incorporates paragraphs 1-68.

70.     On or about October 14, 2009, Plaintiff attempted to secure, and was subsequently denied notwithstanding the creditworthiness reflected in his Equifax and Trans Union credit reports, an adequate credit line to finance his relocation. American Express disclosed that its decision was based on Defendant's reporting to Experian. Plaintiff ordered a serial-numbered hardcopy of his credit report directly from Experian, which reflects that Defendant failed to report the alleged debt as being disputed by the consumer, and that the alleged debt has been verified as true and accurate. Plaintiff has no other collections on his credit

reports and could reasonably have expected credit line approval by American Express but for Defendant's reporting, as his Equifax "FICO Score" at the time of credit denial was 736 in the absence of Defendants' reporting.

71.     On or about October 27, 2009, Plaintiff was informed by one of his creditors that his interest rate was being increased to 23.99%. With the exception of Defendant's reporting, Plaintiff's credit reports reflect no late payments or delinquencies on any accounts.

72.     As a direct result of Defendant's actions, inactions, and omissions since July 24, 2009, Plaintiff has suffered: mental and emotional stress and exhaustion; anxiety in anticipation of being forced to resolve this matter through litigation pro se; preoccupation with this matter to the exclusion of all else; exacerbation of pre-existing health conditions, including less effectiveness in the treatment of said conditions and the return of related signs & symptoms; loss of enjoyment in life; weight gain; difficulty falling asleep and inability to sleep soundly; damaged credit rating; the frustration and embarrassment of being denied credit; being unable to obtain an adequate amount of credit to finance his previously-planned relocation; loss of the significantly greater income that was to be earned subsequent to his relocation, intended to have occurred by late August or early September 2009, and the future damage of not having earned said income between then and the resolution of this matter; being denied the enjoyment and benefit of affordable and adequate credit; and being required to pay very high interest for the inadequate credit obtained.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff JORDAN R. HELMES respectfully requests that judgment be entered against Defendants, RECEIVABLE SOLUTIONS SPECIALIST, INC., ELIZABETH BRICE, BRUCE BRICE SENIOR, BRUCE BRICE JUNIOR, and MAXINE BRICE, inclusive:

A) Declaratory and injunctive relief and judgment that Defendant's conduct violated LA. R.S. 9:3534.1(B) when it failed to register as a debt collector with the Office of the Louisiana Secretary of State as is required to conduct debt collection activity within this state.

B) Declaratory and injunctive relief and judgment that Defendant's reporting of the alleged debt of Account 1 to Experian is unverified, violates the FCRA, and should be removed from Plaintiff's credit reports and permanently barred from reinsertion by the Defendants.

C) Actual damages in the amount to be decided for determined violations of the FDCPA, allowed under 15 U.S.C. § 1692k(a)(1);

D) Statutory damages in the amount of $1,000 per individual Defendant for determined violations of the FDCPA, allowed under 15 U.S.C. § 1692k(a)(2)(A);

E) Actual damages in the amount to be decided for determined violations of the FCRA, allowed under 15 U.S.C. § 1681n(a)(1)(A);

F) Statutory damages in the amount of $1,000 per individual Defendant per determined violation of the FCRA, allowed under 15 U.S.C. § 1681n(a)(1)(A);

G) Punitive damages in the amount to be decided for determined willful violations of the FCRA, allowed under 15 U.S.C. § 1681n(a)(2);

H) All costs and fees of this action, allowed under 15 U.S.C. § 1692k(a)(3) and 15 U.S.C. § 1681n(a)(3);

I) Special damages under Louisiana Law in the amount to be decided;

J) General damages under Louisiana Law in the amount to be decided;

K) All other relief as may be just and proper;

A JURY TRIAL IS DEMANDED.

Respectfully submitted this ___3rd___ day of NOVEMBER, 2009

By PLAINTIFF:         JORDAN R. HELMES
                      119 Miranda Drive
                      Vidalia, LA 71373
                      601-870-4445
                      JordanRHelmes@Gmail.com



# UNITED STATES POSTAL SERVICE

**MAIL**

United States Postal Service®
**DELIVERY CONFIRMATION™**

0306 3400 0002 0647 6554

# Mailing Box
## For Domestic and International Use

*Visit us at usps.com*



$6.80
00102208-02

1005   71101

RECEIVED
BY _____
NOV – 4 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

**PRIORITY® MAIL**
For Domestic and International Use

UNITED STATES POSTAL SERVICE

From  JEROME HAINS
119 MIRANDA DR
VIDALIA, LA 71373

TO  TONY R. MOORE, CLERK
UNITED STATES DISTRICT COURT
300 FANNIN STREET, SUITE 1167
Shreveport, LA 71101 – 3083

Label 228, January 2008